UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re VOLPE INDUSTRIES, INC., )
                         )
           Debtor.       )
                         )
 ------------------------   )
                         )
VIDEO CONCEPTS, LLC,       )
                         )
           Appellant,    )    CIVIL ACTION NO.
                         )    13-10300-DPW
                         )
       v.                )    BANKRUPTCY COURT NO.
                         )    10-20843-FJB
VOLPE INDUSTRIES, INC.,    )
DONALD LASSMAN, CHAPTER 7  )
TRUSTEE OF VOLPE INDUSTRIES, )
INC., and ICONICS, INC.,    )
                         )
           Appellees.    )

MEMORANDUM AND ORDER
August 23, 2013

Appellant Video Concepts, LLC ("Video Concepts") seeks to vacate the bankruptcy court's Order permitting the sale of certain assets of Volpe Industries, Inc. ("Volpe Industries" or "Debtor") to Iconics, Inc. ("Iconics").

## I. BACKGROUND

The assets at issue in this case are the intellectual property in software known as "Project Foxtrot," and the physical server containing the source code (the "Volpe sale assets").

Prior to the bankruptcy, Iconics sued Volpe Industries in Suffolk Superior Court, seeking a declaration of its ownership

-1-

interest in Project Foxtrot.  According to Iconics, Project Foxtrot had been developed for Volpe Industries by an Iconics employee, Simone Massaro, in violation of his employment agreement.  In December 2009, the state court granted partial summary judgment to Iconics, finding that Iconics properly acquired ownership of Project Foxtrot to the extent of Massaro's authorship.  Although the court found that Massaro was at least one of the authors, it reserved for trial a determination of the precise extent of authorship by Massaro and other personnel of the Debtor.  *Iconics* v. *Volpe Industries, Inc.*, No. 09-0361-BLS2, Memorandum and Order (Mass. Super. Dec. 14, 2009).

Volpe Industries commenced Chapter 7 bankruptcy proceedings in October 2010.  The resulting automatic stay, 11 U.S.C. § 362, prevented the state court from reaching a final determination of the extent of Iconics' ownership interest in Project Foxtrot. Nevertheless, given the cost of litigating ownership and the few parties likely to be interested in the Volpe sale assets, the bankruptcy Trustee accepted an offer by Iconics to purchase the assets for $7,500, subject to bankruptcy court approval.  On March 22, 2012, the Trustee moved for a private sale of the assets, subject to counteroffers and additional bidding by May 1. The proposed sale terms allowed the Trustee to sell to the next-highest bidder if the buyer approved by the bankruptcy court failed to close the sale.

-2-

On April 16, TSCM Security Services LLC ("TSCM") filed a counteroffer of $25,000 for the assets.  Iconics filed a further counteroffer and objected to any sale to TSCM, based in part on its assertion of ownership of the intellectual property.  The assets could not be sold free and clear of Iconics' ownership interest without its consent.  *See* 11 U.S.C. § 363(e), (f); Fed. R. Bankr. P. 6004(c).

The bankruptcy court held a hearing on the Trustee's motion to sell on May 1.  Due to the contentious relationship between Iconics and the Debtor, the bankruptcy court specifically inquired whether TSCM had any relationship with either party.  TSCM represented that it had no such relationship.  The court then authorized a sealed bid auction, at which TSCM prevailed with a bid of $210,000, over Iconics' bid of $105,964.

On May 3, TSCM filed a supplemental disclosure stating that "TSCM has a contractual relationship with an entity which is owned by a person (the "Owner") who is a relative of a director, officer or person in control of the Debtor as of the petition date.  However, the Owner is not and never was an officer, director, employee, creditor, shareholder or person in control of the Debtor."  The bankruptcy court nevertheless approved the sale, but sought to protect Iconics' ownership interests by, for example, requiring that the assets be held in escrow to prevent their concealment or destruction.

The sale closed on June 5.  Later that day, TSCM filed suit in federal court seeking a declaration of its ownership in the Sale Assets.  *TSCM Security Servs. LLC* v. *Iconics, Inc.*, No. 12-10998-DJC (D. Mass. filed June 5, 2012).  Iconics then promptly moved for relief from the automatic stay, so it could pursue a final order regarding ownership in the Superior Court action pending prior to the bankruptcy.  TSCM opposed Iconics' motion.

At a June 8 hearing, the bankruptcy judge said he was "troubled by [the] sequence of events" because he had previously understood from the parties that the issue of ownership would be resolved in the pending Superior Court action.  The specter of TSCM's undisclosed principal also loomed.  The bankruptcy judge repeatedly asked TSCM about its relationship with the Debtor through its principal, but counsel for TSCM indicated he was unable to disclose the identity of the principal without its consent.  The bankruptcy judge noted that he was "concerned that there was a fraud upon the Court . . . and I'm not certain that I shouldn't vacate the sale."  Iconics, taking the court's cue, moved to vacate.

During evidentiary hearings in September 2012, following discovery on the motion to vacate, it became clear that TSCM had acted as agent for Video Concepts, an entity controlled by Vince Volpe.  Vince Volpe is the brother of Chris Volpe, one of the officers and directors of Volpe Industries.  The bankruptcy court

-4-

never had occasion to make formal findings on these issues or
their implications, however, because TSCM--apparently to obtain
some degree of peace--and Video Concepts agreed to vacate the
sale on October 3, with the bankruptcy estate retaining the
$210,000 paid by TSCM.  The court approved the agreement to
vacate the sale.  Accordingly, the court also denied the
Trustee's initial March 22 motion to sell, "without prejudice to
a renewed motion by the chapter 7 trustee to sell on the same or
different terms."

Iconics thereafter renewed its offer to purchase the Sale
Assets for $105,964, and the Trustee moved on December 12 for the
court to reconsider its denial of the motion to sell (the
"reconsideration motion").  Video Concepts responded to the
motion and requested the opportunity to participate in
competitive sealed bidding for sale of the assets.  On February
1, 2013--just prior to a scheduled February 5 hearing--Video
Concepts offered $110,000 for a portion of the sale assets,
unaccompanied by a deposit or any form of security.  At the
February 5 hearing, the Trustee orally moved for a continuance so
he could continue to negotiate with Video Concepts, but the
bankruptcy court declined to continue the matter further.  The
Trustee thus continued to pursue the reconsideration motion.  No
creditor of the estate objected to the sale to Iconics.

The bankruptcy court allowed the reconsideration motion,

authorized the sale of assets to Iconics for $105,964, and waived the automatic 14-day stay provided by Fed. R. Bankr. P. 6004(h) without objection from Video Concepts. *In re Volpe Indus., Inc.*, No. 10-20843-FJB, Order (Bankr. D. Mass. Feb. 5, 2013). The bankruptcy court concluded that Video Concepts lacked standing to challenge the sale because it was not a creditor in the estate, had no right to bid, and could not "create standing at the very last moment by providing a strategic bid that is at best marginally better than the existing bid that the Trustee had come here to have approved." The court also found it proper to proceed with the sale in any event, because "the alternatives result[ed] in potentially greater and more expensive litigation, [and] perhaps a determination that would ultimately result in Iconics not proceeding with the sale that's been offered at this stage." The court reasoned that additional delay could result in "further questions as to precisely what the Trustee has to sell, none of which I find to be in the best interests of the estate or the creditors."

On February 8, Video Concepts sought a stay of the sale pending appeal, Fed. R. Bankr. P. 8005, but by then the Trustee and Iconics had already negotiated a bill of sale and the full purchase price had been paid into escrow. The sale was completed on February 11. At a February 12 hearing, the bankruptcy court denied the motion for stay. The court found that Video Concepts

lacked standing to appeal, and, in any event, that there was no substantive basis for a stay because Video Concepts was unlikely to succeed on the merits of any appeal.

Video Concepts promptly sought review of the bankruptcy court's February 5 Order granting the Trustee's reconsideration motion and allowing the sale of assets to Iconics.  Video Concepts again moved for a stay in this court, but the motion was resolved when Iconics stipulated that it would not destroy or transfer the disputed sale assets.

## II. ANALYSIS

I review the bankruptcy court's findings of fact for clear error, its legal conclusions *de novo*, and its discretionary decisions for abuse of discretion.  *Palmacci* v. *Umpierrez*, 121 F.3d 781, 785 (1st Cir. 1997); *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990).

## A.  Mootness & Standing

Appellees argue that this appeal is moot because Video Concepts failed to obtain a stay pending appeal and the sale of assets to Iconics is complete.  Appellees also argue that Video Concepts, as a mere disappointed bidder, lacks standing.  I address these questions together because they present effectively the same issue: whether Iconics purchased the Volpe sale assets in "good faith."

On the question of mootness, an appeal of a bankruptcy sale

is typically moot without a stay of appeal.  11 U.S.C. § 363(m);
*In re Sax*, 796 F.2d 994, 997 (7th Cir. 1986).  A stay is not
required, however, to challenge a sale on the ground that the
purchaser did not act in good faith.  *In re Colarusso*, 382 F.3d
51, 62 n.10 (1st Cir. 2004).

On the question of standing, "a prospective purchaser of
assets from a bankruptcy estate is not within the zone of
interests intended to be protected by the Bankruptcy Code and,
therefore, does not typically have standing to challenge a sale
of the assets to another party."  *In re Murphy*, 288 B.R. 1, 4 (D.
Me. 2002).  However, courts have found that even a mere
unsuccessful bidder has standing to challenge the "inherent
fairness" or "intrinsic structure of the sale."  *In re Colony
Hill Associates*, 111 F.3d 269, 274 (2d Cir. 1997); *accord In re
Murphy*, 288 B.R. at 5.

The standing inquiry collapses into the mootness inquiry in
this case because the same considerations that would call into
question the fairness of the sale are also those that would
preclude Iconics from having purchased in good faith--namely,
"fraud, collusion between the purchaser and other bidders or the
trustee, or an attempt to take grossly unfair advantage of other
bidders."  *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198
(7th Cir. 1978); *In re Colony Hill Associates*, 11 F.3d at 276; *In
re Murphy*, 288 B.R. at 5.

-8-

Video Concepts argues that Iconics acted in bad faith by asserting an ownership interest in the whole of the Volpe sale assets and by threatening litigation against any other successful bidder.  The argument is without force.  Iconics had asserted full ownership of Project Foxtrot prior to the bankruptcy, undermining any argument that Iconics' litigation strategy "was specifically directed at controlling the sale price or taking unfair advantage of the bidders." *In re Gucci*, 126 F.3d 380, 391 (2d Cir. 1997).  Moreover, the Superior Court gave no indication that Iconics' claims were baseless.  To the contrary, the state court found, based on the summary judgment record, that Iconics' employee Massaro "was at least one of the authors, *if not the sole author*, of the material that constitutes Project Foxtrot." *Iconics* v. *Volpe Industries, Inc.*, No. 09-0361-BLS2, Memorandum and Order, at 15 (Mass. Super. Dec. 14, 2009) (emphasis added). The state court thus recognized a legitimate possibility of an undivided ownership interest by Iconics in Project Foxtrot. Iconics' efforts to make that legitimate possibility a reality by means other than continued state court litigation were not inappropriate.

Video Concepts suggests there may have been collusion between Iconics and the Trustee.  The basis for this allegation is the suggestion that Iconics crafted the strategy of renewing its purchase offer by means of the Trustee's reconsideration

motion.  It is impossible to find, however, that Iconics and the
Trustee were colluding to shut Video Concepts out of the sale
process.  Iconics, after all, originally *lost* the bidding for the
sale assets.  Once the sale to TSCM was vacated, the Trustee made
a good faith effort to ensure that the estate would not lose what
had been the second-highest bid at the initial sale by
accommodating Iconics' preferred means of renewing its $105,964
offer.  And, even in renewing the offer by means of the
reconsideration motion, the Trustee retained discretion to
withdraw the motion.  Indeed, far from colluding with Iconics to
shut out Video Concepts, the Trustee asked the bankruptcy court
for additional time to negotiate with Video Concepts and to
consider withdrawing his request to sell to Iconics.  That is not
the stuff of collusion.

Video Concepts faults the bankruptcy court for having failed
to make specific findings on Iconics' good faith purchaser
status.  But I may "affirm the bankruptcy court ruling on any
ground supported by the record" provided there is "competent
evidence from which the bankruptcy court could have adduced the
essential findings of fact underlying its ruling." *In re Erin
Food Servs., Inc.*, 980 F.2d 792, 801 (1st Cir. 1992).  I have no
difficulty concluding that the record supports a finding that
Iconics was a good faith purchaser.  The lack of any substantial
foundation for concluding otherwise is likely the reason the

bankruptcy court failed to make its findings on the issue
explicit.

## B.  Abuse of Discretion Review

It appears, then, that Video Concepts raised the issue of
"good faith purchaser" merely to avoid dismissal of this appeal
for mootness or lack of standing.  In reality, Video Concepts
seeks to challenge the bankruptcy court's approval of the sale on
the merits.  As an alternative grounds for not displacing the
bankruptcy court's judgment, I will outline my view that even if
Video Concepts had standing to bring such a challenge, and also
assuming that the challenge were not moot, I would not on the
merits disturb the sale.

A bankruptcy trustee has a duty to "maximize the value
obtained from a sale" of estate assets.  *In re Bakalis*, 220 B.R.
525, 532 (Bankr. E.D.N.Y. 1998).  In deciding whether to approve
a trustee's recommendation of sale, however, the bankruptcy court
owes the trustee a broad amount of deference, seeking only to
ensure that the trustee exercised reasonable "business judgment."
*Id.*  A bankruptcy court's authorization of sale is then, in turn,
reviewed only for abuse of discretion.  *BAC Home Loans Servicing
LP* v. *Grassi*, No. EP-11-010, 2011 WL 6096509, at *4 (B.A.P. 1st
Cir. Nov. 21, 2011).  Video Concepts cannot establish that the
Trustee's recommendation of sale was an improper exercise of
business judgment, let alone overcome the additional layer of

deference implicated in my review of the bankruptcy court's approval of the sale.

Video Concepts in effect argues that the bankruptcy court erred by allowing the sale of estate assets without requiring the Trustee to hold a bidding auction.  In some circumstances the bankruptcy court may abuse its discretion by allowing sale without auction.  *Cf. In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415 (B.A.P. 9th Cir. 2003) (failure to hold auction abuse of discretion where there was possibility of obtaining substantially higher sale price and creditors objected to outright sale).  An auction, however, is by no means an absolute requirement to sale.  And even in the case of an auction, "[t]he highest bid does not always equate to the best bid for the estate." *In re Diplomat Const., Inc.*, 481 B.R. 215, 219 (Bankr. N.D. Ga. 2012).  Central to the inquiry is whether the "Trustee carefully weighed the competing bids rather than mechanistically recommending the facially higher bid." *In re Bakalis*, 220 B.R. at 532.

The sale to Iconics cannot be isolated from the tortuous road to that sale.  The Trustee sought to exercise the next-highest-bidder provision of the original sale, which would have authorized the sale to Iconics if TSCM had merely failed to close.  TSCM, of course, did not fail to close the initial sale, but what followed was even worse for the estate.  As a result of

-12-

what is at best characterized as coyness--and at worst fraud--on the part of TSCM and Video Concepts, the bankruptcy court was left to preside over six months of litigation regarding the propriety of the sale, during which the Trustee incurred approximately $115,000 in fees and expenses.  The Trustee and the bankruptcy court could not ignore this history of unseemly behavior in determining how to treat Video Concepts' last-minute and only marginally-higher bid, submitted without a deposit or other security.

The Trustee also reasonably weighed the fact that the only parties ever to have expressed an interest in the Volpe sale assets were Iconics, TSCM and, belatedly, Video Concepts.  The limited set of potential buyers made all the more important the refusal by Video Concepts to provide a deposit or other assurance that it would proceed with purchase of the assets at its $110,000 offer.  If the Trustee had abandoned Iconics' offer of $105,964 in order to conduct further negotiations with Video Concepts but Video Concepts was then unwilling or unable to the complete the sale, the Trustee risked returning to a one-bidder scenario and a non-competitive sale price much closer to Iconics' original offer of $7,500.  Without objection from any creditor of the estate, the Trustee reasonably concluded--and the bankruptcy court did not abuse its discretion in agreeing--that the most prudent course was to "elect[] the bird in the hand."

Finally, a sale to anyone other than Iconics inevitably would have been more expensive due to negotiations or further litigation regarding sale provisions necessary to protect Iconics' ownership interests.  Although protective provisions included in the first sale to TSCM likely would have provided a blueprint (and thereby reduced the cost of further negotiations in the second sale), the Trustee reasonably judged that such costs might outweigh any marginally higher price obtained from Video Concepts.[1]

Thus, even if a merits review of the bankruptcy court's order approving the sale were the proper subject of this appeal, I would find no abuse of discretion.

---

[1] I do not rely on the further concern offered by the bankruptcy court that, after further litigation, "it would be determined that the estate has no interest to sell."  As earlier discussed, the assets could not be sold free of Iconics' interest without its consent.  11 U.S.C. § 363(e), (f).  However, the assets could be sold subject to Iconics' interests given adequate protection of those interests in the terms of the sale, just as the court had done in the sale to TSCM.  A potential buyer thus could have taken the assets subject to Iconics' ownership interests and still offered a higher price than Iconics, based on the buyer's own valuation of the assets and confidence in its ability to prevail over Iconics in later litigation over ownership.  If there were a reliable buyer without the history presented by Video Concepts in the mix willing to take such a risk and provide adequate security for its participation, the bankruptcy court might have abused its discretion by nevertheless approving the sale to Iconics.  However, there was no such reliable alternative buyer here and there was no abuse of discretion when the bankruptcy judge in effect concluded that Video Concepts did not qualify as one.

### III. CONCLUSION

For the reasons set forth more fully above, February 5, 2013 Order of the bankruptcy court granting the Motion of Chapter 7 Trustee to Reconsider Denial of Motion to Sell Property of the Estate at Private Sale is AFFIRMED.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE